# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### FOURTH DIVISION

|  |  |
|---|---|
| VELMA BURT, individually, | CIVIL CASE # _____ |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | DEMAND FOR JURY TRIAL |
| PFIZER, INC., PHARMACIA CORPORATION, G.D. SEARLE LLC, (FKA G.D. SEARLE & CO.), and MONSANTO COMPANY, |  |
| Defendants. |  |

## <u>COMPLAINT</u>

COMES NOW, Velma Burt ("Plaintiff"), complaining of Pfizer, Inc., Pharmacia Corporation, G.D. Searle LLC (fka G.D. Searle & Co.), and Monsanto Company ("Defendants"), and for her cause of action against the Defendants states as follows:

### Statement of the Parties

1.      This is a civil action brought by Plaintiff, Velma Burt, for injuries resulting in a heart attack.  Plaintiff was prescribed and used the prescription medication Celebrex (Celecoxib). This action seeks monetary damages for injuries caused by Celebrex.

2.      Plaintiff, Velma Burt, is over the age of 19 years and is currently a resident of Phenix City, Alabama.

3.      Pursuant to Minn. Stat. section 303.02(6) (1990), a Plaintiff who is a non-resident of Minnesota is able to bring action in this Court against foreign corporation Defendants. This Court has jurisdiction over this case under section 303.02(6), because Defendants conducted

business in the State of Minnesota through pharmaceutical sales representatives conducting business in the State of Minnesota on behalf of Defendants, thus there exists a sufficient nexus between the Defendants' forum contacts and the Plaintiff's cause of action to justify assertion of jurisdiction in Minnesota.

4.      Defendant PFIZER, INC. ("PFIZER") is a Delaware corporation with its principal place of business in New York, New York.  On July 16, 2002 PFIZER announced its proposed acquisition of PHARMACIA CORPORATION ('PHARMACIA").  On April 16, 2003, PFIZER completed its $60 billion acquisition of PHARMACIA.   As a wholly-owned subsidiary of PFIZER, PHARMACIA acted in all aspects as PFIZER's agent and alter ego.  At all relevant times, PFIZER and/or its predecessors in interest were engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting, and selling the drug Celecoxib, under the trade name CELEBREX in Minnesota and throughout the United States. Defendant PFIZER is licensed and registered to do business in the State of Minnesota and may be served through its registered agent at Pfizer, Inc., 405 2nd Avenue South, Minneapolis, Minnesota 55401.

5.      Defendant G.D. SEARLE LLC, (FKA G.D. SEARLE & CO.) ("SEARLE") is a Delaware corporation with its principal place of business in Illinois.  In April 2000 SEARLE was acquired by PHARMACIA, and became a wholly-owned subsidiary of PHARMACIA.  At the time of PFIZER's acquisition of PHARMACIA, SEARLE was a wholly-owned subsidiary of PHARMACIA, acting as its agent and alter ego in all matters alleged in this Complaint, and is now a wholly-owned subsidiary of PFIZER.  At all relevant times, SEARLE has been engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting, and selling the drug Celecoxib, under the trade name CELEBREX in Minnesota and throughout

the United States. G.D. Searle LLC's principal place of business is in Illinois and may be served through its registered agent at C T Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

6.      Defendant PHARMACIA is a Delaware corporation with its principal place of business in New Jersey. PHARMACIA was created in April 2000 through the merger of Pharmacia & Upjohn with Monsanto Company and its G.D. SEARLE unit. PHARMACIA is now a wholly-owned subsidiary of PFIZER. At all relevant times, PHARMACIA, and its predecessors in interest have been engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting, and selling the drug Celecoxib, under the trade name CELEBREX in Minnesota and throughout the United States. G.D. Searle LLC's principal place of business is in Illinois and may be served at its principal place of business at 100 U. S. Highway 206 North, Peapack, New Jersey 07977.

7.      Defendant MONSANTO COMPANY ("MONSANTO") was the parent corporation of SEARLE and is a Delaware corporation. At all times relevant hereto, MONSANTO, through its subsidiary companies, was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product CELEBREX in Minnesota and throughout the United States. Defendant MONSANTO is licensed and registered to do business in the State of Minnesota and may be served through its registered agent at Monsanto Company, 380 Jackson Street #418, St. Paul, Minnesota 55101.

8.      Celecoxib was developed in 1998 by SEARLE and marketed jointly by SEARLE and PFIZER under the brand name CELEBREX. SEARLE was acquired by PHARMACIA, which was then acquired by PFIZER, in part so that PFIZER could take full control of CELEBREX.

9.     At all times relevant to this action, Defendants intentionally, recklessly and/or negligently concealed, suppressed, omitted, and misrepresented the risks, dangers, defects, and disadvantages of CELEBREX, and advertised, promoted, marketed, sold and distributed CELEBREX as a safe prescription medication when, in fact, Defendants had reason to know, and did know, that CELEBREX was not safe for its intended purposes, for the patients for whom it was prescribed, and for whom it was sold; and that CELEBREX caused serious medical problems, and in certain patients, catastrophic injuries and deaths.

10.     In engaging in the conduct alleged herein, each Defendant acted as the agent for each of the other Defendants, or those Defendant's predecessors in interest.

11.     Personal jurisdiction and subject matter jurisdiction are appropriate in this court as to all Defendants, as all Defendants have done business in Hennepin County, Minnesota, either directly or by agent, and have thus availed themselves of this jurisdiction.

12.     The Defendants have been and/or are currently engaged in business, directly or by authorized agent, in Hennepin County, Minnesota. Venue and jurisdiction are therefore proper. The claims of the Plaintiff herein satisfy the jurisdictional amount of this Court.

## Factual Background

### A.     Facts Regarding Plaintiff

13.     Velma Burt was 57 years old on or about March 27, 2004, when she suffered a heart attack due to her use of CELEBREX.

14.     Plaintiff and Plaintiff's healthcare providers were at the time of Plaintiff's injuries unaware—and could not have reasonably known or have learned through reasonable diligence—that such injury directly resulted from Plaintiff's ingestion of CELEBREX and Defendants' negligent and otherwise culpable acts, omissions, and misrepresentations.

15.     Plaintiff used CELEBREX in a proper and reasonably foreseeable manner and used it in a condition that was substantially the same as the condition in which it was manufactured and sold.

16.     Plaintiff would not have purchased and used CELEBREX had Defendants properly disclosed the risks associated with the drug, and through diligent effort was not able to discover the risk from CELEBREX prior to use of the drug.

**B.     Facts Regarding CELEBREX: Science And Other Cox-2 Inhibitors**

17.     CELEBREX is among a class of pain medications called non-steroidal anti-inflammatory drugs ("NSAIDs").  Aspirin, naproxed (trade name Aleve®), and ibuprofen (trade name Advil®) are examples of well-known NSAIDs.

18.     NSAIDs reduce pain and inflammation by blocking the body's production of pain transmission enzymes called cyclooxygenase, COX-1 and COX-2.  COX enzymes trigger the sequential oxidation of various fatty acids to create prostaglandins.  Prostaglandins are important cogs in the physiology of pain, igniting hormone-like actions in the immediate vicinity of the cells that release them, thereby inducing inflammation, pain, and fever.

19.     Because COX enzymes and prostaglandins increase the pain associated with tissue injury, the synthesis of prostaglandins by cells of injured tissue becomes a reasonable target for pain-management drugs.

20.     Traditional NSAIDs like aspirin, ibuprofen and naproxen inhibit both COX-1 and COX-2 enzymes simultaneously, providing relief from inflammation and pain, but at the cost of potential adverse gastrointestinal effects, as the prostaglandins that are supported by COX-1 enzymes are involved in the production of gastric mucus which protects the stomach wall from the hydrochloric acid present in the stomach.  By blocking the COX-1 enzyme, the body's ability to protect gastric tissue is hampered and, as a result, can cause harmful gastrointestinal side effects, including stomach ulceration and bleeding.

21.     Defendants and other pharmaceutical companies set out to remedy these gastrointestinal side effects suffered by some NSAID users by developing "selective" inhibitors,

called coxibs, which targeted only COX-2 production, thus (allegedly) allowing for proper maintenance of gastric tissue while still reducing inflammation. Their development was based on the hypothesis that COX-2 was the source of prostaglandins E2 and I2, which mediate inflammation, and that COX-1 was the source of the same prostaglandins in the stomach lining. By not inhibiting COX-1, whose products provide cytoprotection in the gastric epithelium, these coxibs were thought to decrease the incidence of gastric side effects when compared to traditional NSAIDS that inhibit both COX-1 and COX-2.

22.     In making this decision, however, Defendants and their predecessors in interest either intentionally ignored and/or recklessly disregarded current medical knowledge that selective COX-2 inhibition lowers prostaglandin I2 levels, the predominant COX-2 product responsible for preventing platelet aggregation and clotting, while leaving thromboxane A2, the potent COX-1 platelet aggregator and vasoconstrictor, unaffected. By selectively inhibiting prostaglandin I2 without similarly suppressing its COX-1 counterpart, CELEBREX and other coxibs expose their users to a host of clot-related cardiovascular risks, including heart attack, stroke, and unstable angina.

23.     On June 29, 1998, SEARLE and PFIZER filed for FDA approval of Celecoxib, its first major COX-2 inhibitor drug, under the trade name CELEBREX. The FDA granted preliminary approval of the new drug on December 31, 1998 for the relief of signs and symptoms of adult osteoarthritis and rheumatoid arthritis. A year later, on December 23, 1999, the FDA granted accelerated approval of CELEBREX for a second indication; the reduction of intestinal polyps as an adjunct to endoscopy and surgery in patients with familial adenomatous polyposis (FAP), a rare genetic disorder.

24.     In late January 1999, following FDA approval, PFIZER publicly launched CELEBREX, their new "blockbuster" drug, in one of the largest direct-to-consumer marketing campaigns ever undertaken for prescription drugs. PFIZER's massive marketing campaign fraudulently and misleadingly depicted CELEBREX as a much safer and more effective pain reliever than less inexpensive traditional NSAIDs. Defendants and their representatives and

agents misrepresented the safety profile of CELEBREX to consumers, the medical community, healthcare providers, and third party payors.

### C. Facts Regarding Celebrex's Safety And Defendants' Knowledge Thereof

25.     The potential for cardiovascular risk of selective COX-2 inhibitors was known to Defendants long before the FDA granted market approval in December 1998.  By 1997, and prior to the submission of the New Drug Application (the "NDA") for CELEBREX, Defendants were aware that, by selectively inhibiting only the COX-2 enzyme, CELEBREX altered the homeostatic balance between prostacylcin synthesis and thromboxane and thereby increased the prothrombotic effects of the drugs, causing blood clots to form in those who ingested it.  *See* Topol, E.J., *et al.*, "*Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors*," JAMA, August 22, 2001 at 954.

26.     Pharmacologist Dr. Garrett Fitzgerald of the University of Pennsylvania reported in an editorial published in *The New England Journal of Medicine* on October 21, 2004, that contemporaneous with Defendants' launch it was known that selective COX-2 inhibitors, such as CELEBREX, suppressed the formation of prostaglandin I-2 in healthy volunteers, inhibited platelet aggregation in vitro, and may predispose patients to myocardial infarction or thrombotic stroke.  Fitzgerald, G.A., Patrono C., "*The Coxibs, Selective Inhibitors of Cyclooxygenase-2,*" N Engl J Med 2001;345:433-442.

27.     Early FDA updates in March and April of 1999 similarly acknowledged this known risk, but noted, based upon PFIZER's representations, that CELEBREX "does not affect platelet aggregation (clumping), an important part of the blood clotting process."  *See* FDA Updates, *"New Arthritis Drug May Have Fewer Side Effects,"* FDA Consumer March-April 1999.

28.     Based on the studies performed on CELEBREX, other COX-2 inhibitors, and basic research on this type of selective inhibitor which had been widely conducted, Defendants knew when CELEBREX was being developed and tested that selective COX-2 inhibitors posed

serious cardiovascular risks for anyone who took them, and presented a specific additional threat to anyone with existing heart disease or cardiovascular risk factors.

29.     Despite years of studies on selective COX-2 inhibitors, as well as the disturbing new studies specifically analyzing the risks of CELEBREX, Defendants failed to take any action to protect the health and welfare of patients, opting instead to continue promoting the drug for sale even after the FDA's Drug Safety and Risk Management Advisory Committee and Arthritis Drug Advisory Committee meetings.

   **D.     CELEBREX and Cox-2 Studies Did Not Show CELEBREX to be Safe**

           **1.     CELEBREX Long-Term Arthritis Safety Study (CLASS)**

30.     In September 1998, PHARMACIA sponsored an allegedly independent CELEBREX Long-Term Arthritis Safety Study ("CLASS"). The multicenter, double-blind, parallel group study sought to compare the incidence of clinically significant upper gastrointestinal events between CELEBREX 400 mg BID and Ibuprofen 800 mg. (CLASS data is found in NDA 20-998/S-009 submitted to the FDA by SEARLE on June 12, 2000. CLASS was submitted to the FDA on June 12, 2000 and reviewed by James Witter, M.D., Ph.D. (FDA Medical Officer) on September 20, 2000.)

31.     On September 13, 2000, Defendants released the results of the CLASS study in the *Journal of American Medicine*. Silverstein, F.E., *et al.*, "*Gastrointestinal Toxicity with Celecoxib vs. Nonsteroidal Anti-inflammatory Drugs for Osteoarthritis and Rheumatoid Arthritis: The CLASS Study: A Randomized Controlled Trial*," 284 JAMA 1247 (2000). Researchers enthusiastically reported a "lower incidence of symptomatic ulcers and ulcer complications combined, as well as other clinically supported toxic effects, compared with NSAIDs at standard doses."

32.     Although Defendants touted the CLASS study as the primary evidence to support its theory that CELEBREX was safer for consumers who could not tolerate traditional NSAIDs in their gastrointestinal system, Defendants intentionally, recklessly and/or negligently concealed, suppressed, omitted, and misrepresented the results, risks and defects of the CLASS

study. Among other things, Defendants failed to release the study's complete twelve month results releasing only the first six months of trials, reported biased and misleading results, limited conclusions to upper gastrointestinal events despite other known risks factors, and understated known cardiovascular risks.

33. Despite Defendants' favorable CLASS Study conclusions, no other reviewing or administrative body was able to substantiate those findings. The FDA Medical Officer Review of the CLASS data found CELEBREX to be no more efficacious than other traditional NSAIDS comparators. *See generally*, FDA Medical Officer Review, NDA 20-998/S-009 submitted to the FDA by SEARLE on June 12, 2000. According to the FDA's review of the CLASS data: "Celecoxib did not demonstrate any statistical superiority to NSAIDs (pooled) or either comparator (diclofenac and ibuprofen) with regards to the primary safety endpoint of CSUGIE (Clinically Significant Upper Gastrointestinal Adverse Events) at any point in the trial although there were trends that favored celecoxib." (FDA CLASS Review). '

34. The FDA Arthritis Advisory Committee similarly found no "clinically meaningful" safety advantage of CELEBREX over older NSAIDs. (FDA CDER Arthritis Advisory Committee, February 7th and 8th, 2001, Gaithersburg, Maryland). The CLASS Study failed to demonstrate a superior safety record over ibuprofen or pooled NSAID data. Based on this information, the Committee advised that further studies be done to assess the risk of COX-2 drugs and NSAIDS when taken with aspirin.

35. In a June 2002 editorial, the *British Medical Journal* chastised the Study's "misleading" and "seriously biased" nature; noting that the complete results "clearly contradict[ed] the published conclusions," and warning against the dangers of "overoptimistic," "short-term" data and "post hoc changes to the protocol." Juni, Peter*, et. at., "Are Selective COX 2 Inhibitors Superior To Traditional Non Steroidal Anti-Inflammatory Drugs?"* BMJ 2002;324:1287-1288. Most noticeably, the CLASS study considered only six months of data despite the fact that researchers at that point had 12 months of data that, when analyzed as a whole, showed no significant difference. Instead of releasing the complete 12-month results

from CLASS, PFIZER relied on and published only the first six months of data. JAMA 2000, 48:1455-1460. The results of the completed study revealed the real truth: CELEBREX offered no gastrointestinal (GI) benefit. Almost all ulcer-related complications that had occurred during the second half of the CLASS trials were in users of CELEBEX. These results clearly contradict the published CLASS conclusions.

36.     Editors of the Journal of the American Medical Association (JAMA) and other medical experts were reportedly "flabbergasted" when they realized they had been "duped" by only being provided with the first six months of CLASS data. Okie S., *"Missing data on Celebrex: Full study altered picture of drug,"* Washington Post 2001 Aug 5;Sect A:11. The *Washington Post* reported JAMA editors noting: "When all of the data were considered, most of CELEBREX's apparent [GI] safety advantage disappeared."

37.     Institutional bias also appeared to play a role in the Study's biased conclusions. According to the *Washington Post*, all sixteen CLASS authors were either employees of PHARMACIA or paid consultants of the company. Okie, S., *"Missing data on Celebrex: Full study altered picture of drug,"* Washington Post 2001 Aug 5;Sect A:11. Moreover, at least one author, Dr. M. Michael Wolfe, a gastroenterologist from Boston University, admits he was duped by PHARMACIA. In the summer of 2000, *The Journal of the American Medical Association* asked Wolfe to participate in the "six-month" trial. Wolfe found the study, tracking 8,000 patients over a six-month period, persuasive, and penned a favorable review, which helped to drive up CELEBREX sales. It was not until early the next year, while serving on the FDA's Arthritis Advisory Committee, that Wolfe learned the study had run for one year, not six months, as the company had originally led both Wolfe and the *Journal* to believe. *Id.* Here again, when the complete data was considered, most of CELEBREX advantages disappeared.

38.     Defendants also limited conclusions of the CLASS study to upper gastrointestinal events, despite other known risks factors, and understated known cardiovascular risks. A metastudy by the Cleveland Clinic published in the Journal of the American Medical Association analyzed data from two major studies, including CLASS, funded by the drug companies and two

smaller ones—all for cardiovascular risks. Debabrata Mukherjee, *et al.*, "*Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors*," 286 JAMA 954 (2001).) The metastudy found that PHARMACIA failed to identify and study cardiovascular risks for their products. The annualized heart attack rates for patients taking Vioxx or Celebrex, the researchers found, were "significantly higher" than those in a group taking placebos. "The available data raise a cautionary flag about the risk of cardiovascular events with Cox-2 inhibitors," they concluded.

39.     "A total of 36 deaths occurred during the [CLASS] study or during post study follow-up: 19 in the celecoxib group, 9 in the diclofenac group and 8 in the ibuprofen group . . . . Most deaths were cardiovascular in nature." FDA CLASS Review at 54. The increased number of adverse cardiovascular events in the CELEBREX group was not surprising, as they were also revealed in the original New Drug Application (NDA) submitted for CELEBREX. "In the original NDA, myocardial infarction was noted to occur at a higher rate in celecoxib-treated as compared to placebo treated patients. In the long term trial (Trial 024) that was included in the NDA submission, the predominate (>90%) cause of death for patients taking celecoxib at any dose was cardiovascular." FDA CLASS Review at 78.

40.     Public Citizen, a public watchdog organization, also reviewed the CLASS data in its entirety. A complete review reveals the combined anginal adverse events were 1.4% in the CELEBREX group versus 1.0% in either NSAID group. Specifically, the rate of heart attack in the CELEBREX was double that of the other two NSAIDs, 0.2% vs. 0.1%, respectively.

41.     Eric Topol of the Cleveland Clinic reached a similar conclusion, noting that the CLASS trail MI rate was 1.6% in CELEBREX group (at a dosage of 400 mg twice a day) and 1.2% in the ibuprofen group for the 1739 patients taking low-dose aspirin. Topol noted that this numerical excess, albeit not statistically significant, was also found in the 6229 patients not taking aspirin in the trial. Eric J. Topol, *"Arthritis Medicines and Cardiovascular Events – House of Coxibs,"* JAMA 293:366. Based on this data, Topol and his colleagues concluded: "It is mandatory to conduct a trial specifically assessing cardiovascular morbidity." *Id.*

- 11 -

Unfortunately, no such trials were ever initiated, delaying the official warnings of CELEBREX and jeopardizing countless lives in the process.

42.     The CLASS data proves that PFIZER knew that its first generation COX-2 inhibitor, CELEBREX, caused a disproportionately and statistically significant high number of adverse cardiovascular events before it was introduced to the market in January 1999. According to Public Citizen, after CLASS, the FDA recommended a trial to specifically assess the cardiovascular risks of COX-2 inhibitors.  The Adenoma Prevention with Celecoxib (APC) trial was intended to be this placebo-controlled trial of CELEBREX.

### 2.     APC Trial

43.     In early 2000, the National Cancer Institute (NCI), in collaboration with SEARLE and PFIZER, initiated the Adenoma Prevention with Celecoxib (APC) trial, a randomized, double-blind, placebo-controlled study to discover the efficacy of CELEBREX in preventing the growth of pre-cancerous colon polyps.  N.Eng. J. Med. 352;11 at 1072.   The trial involved 2026 patients across the country with randomization to one of three groups: (1) placebo; (2) 200 mg CELEBREX twice daily; and (3) 400 mg CELEBREX twice daily.  The patients, each of whom had an adenomatous polyp removed before enrollment, were followed up for a mean of 33 months while taking the study drug, with the primary objective of limiting the development of colorectal cancer.

44.     On December 17, 2004, the National Cancer Institute suspended the use of CELEBREX for all participants in the APC trial due to "significant excess of cardiovascular death, myocardial infarction (MI) and stroke."   Eric J. Topol, "*Arthritis Medicines and Cardiovascular Events – House of Coxibs,*" JAMA 293:366.   Analysis by an independent Data Safety Monitoring Board (DSMB) showed a two to three fold increased risk of major fatal and non-fatal cardiovascular events for participants taking the drug compared to those on a placebo with a secondary dose-response effect.

45.     The absolute excess of major cardiovascular events of 13/1000 patients at the 800 mg dose (400 mg 2x day) was strikingly similar to the results of trials with rofecoxib and

valdecoxib, both selective NSAID COX-2 inhibitors removed from the market for their significant cardiovascular risks. Eric J. Topol, *"Arthritis Medicines and Cardiovascular Events – House of Coxibs,"* JAMA 293:366.

46.     The FDA reported similar results, noting:

> In the National Cancer Institute's Adenoma Prevention with Celecoxib (APC) trial in patients at risk for recurrent colon polyps, a 2-3 fold increased risk of serious adverse CV events was seen for CELEBREX compared to placebo after a mean duration of treatment of 33 months. There appeared to be a dose response relationship, with a hazard ratio of 2.5 for CELEBREX 200 mg twice daily and 3.4 CELEBREX 400 mg twice daily for the composite endpoint of death from CV causes, myocardial infarction (MI), or stroke.

April 7, 2005 FDA Alert: www.fda.gov/cder/drug/infopage/celebrex/celebrex-hcp.htm.

47.     The dosage noted in the study is itself important for two reasons: first, there appears to be an association between dosage and the increase in adverse cardiovascular events; second, most patients increase dosage. PFIZER knew patients were increasing their dosages as noted in the CLASS Study: "Interestingly ... up to 70% of patients increased their dose for celecoxib." FDA CLASS Review at 74. Thus, PFIZER was aware of "dosage creep."

### 3.     Other CELEBREX Trials

48.     Several other CELEBREX trials also gave Defendants insight into the cardiovascular risks presented by CELEBREX. The Prevention of Spontaneous Adenomatous Polyps (PreSAP) trial identified the death rate from cardiovascular causes (heart attack, stroke, heart failure, angina, or need for CV procedure) as 3.6% with CELEBREX as compared to 2.7% for placebo.

49.     Public Citizen also reviewed the results of Study IQ IQ5-97-02-001 which reflected "the combined rate of all serious cardiovascular adverse events in patients getting a placebo was 2.1% but was greatly increased in those getting celecoxib to 7.7%, a 3.6 fold increase in CV risk in those people taking celecoxib. (p=0.03)." *Public Citizen*, January 26,

2005, Dr. Sidney M. Wolfe. According to Dr. Sidney Wolfe, "The study revealed a significantly increased rate (3.6-fold) of serious CV adverse events and more than a doubling in the rate of CV deaths in people using celecoxib compared to those using placebo." Id.

### 4. Cox-2 Studies: VIGOR and APPROVe

50.     PFIZER also had access to other data which indicated a cardiovascular risk with its drugs. Specifically, PFIZER had knowledge of two studies conducted by Merck related to its Cox-2 inhibitor Vioxx – Vioxx Gastrointestinal Outcomes Research (VIGOR) and Adenomatous Polyp Prevention (APPROVe).

### a. VIGOR

51.     In 2000, The FDA Medical Officer Review of CLASS specifically noted the VIGOR trial and the concern over serious adverse cardiovascular events. FDA CLASS Review at 78.

52.     According to VIGOR (near acronym for Vioxx Gastrointestinal Outcomes Research) Vioxx patients experienced 20% more serious clinical adverse events (statistically significant); they experienced 4.6 times more hypertension events serious enough to warrant discontinuation, 1.7 times more edema events, and 1.85 times as many congestive heart failure adverse events. By two measures of cardiovascular events related to blood clots, Vioxx had twice the risk of naproxen and the results were considered statistically significant.

53.     The VIGOR study comprised the most definitive scientific evidence ever obtained about pharmaceutical products. It was a large, randomized clinical trial, the gold standard of medical research. It was a safety study with endpoints set in advance. As Merck stated many times, it was designed to provide definite proof of safety, convincing enough to silence the most skeptical critics. In medical terms, the VIGOR results raised the question of whether selective inhibition of COX-2 was a monumental mistake from the start. While the NSAID risks to the GI system were real and sometimes fatal, they were dwarfed by the cardiovascular risks of the arthritis population that needed these drugs on a daily basis. All makers of NSAIDs, including Defendants, were aware of these results.

#### b. **APPROVe**

54.     Anxious to put safety questions surrounding Vioxx to rest, Merck designed another large scale trial, Adenomatous Polyp Prevention (APPROVe), which was intended to test the drug's ability to prevent or shrink colon polyps, but would also compare the cardiovascular safety of Vioxx to a placebo control.  According to the analysis conducted by Public Citizen of the APPROVe data: Vioxx "doubled the risk of any thrombotic cardiovascular event" and "doubled the risk of MI (myocardial infarction a/k/a heart attack)[1]. *Public Citizen*, January 24, 2005, at 15.  Despite the available CELEBREX data and other information related to Vioxx, PFIZER never paused to reevaluate the CELEBREX data and studies.

55.     The scientific data available during and after CELEBREX's approval process made clear to Defendants that their formulation of CELEBREX would cause a higher risk of blood clots, stroke and/or myocardial infarctions among CELEBREX consumers, alerting them to the need to do additional and adequate safety studies.

56.     As stated by Dr. Topol on October 21, 2004, in *The New England Journal of Medicine*, outlining Defendants' failure to have conducted the necessary trials before marketing to humans "it is mandatory to conduct a trial specifically assessing cardiovascular risk and benefit of (COX-2 inhibitors).  Such a trial needed to be conducted in patients with established coronary artery disease, who frequently have coexisting osteoarthritis requiring medication and have the highest risk of further cardiovascular events."

57.     Dr. Topol was also the author on the study published in August 2001 in JAMA (listed above) that reported an increased risk of thrombotic cardiovascular events in persons who used COX-2 inhibitors.

---

[1] Although Merck claims that the two-fold risk of heart attacks and strokes seen in the APPROVe trial did not emerge until after patients had been taking the drug for 18 months, closer analysis indicates that significant increase in risk of heart attack was evident in as little as 4 months time.

- 15 -

58.     Based upon readily available scientific data, Defendants knew, or should have known, that their pre-approval testing of CELEBREX did not adequately represent the cross-section of individuals who were intended consumers and therefore, likely to take CELEBREX. Therefore, Defendants' testing and studies were grossly inadequate.

59.     Had Defendants done adequate testing prior to approval and market launch, rather than the extremely short duration studies done on the small size patient base that was actually done, the Defendants' scientific data would have revealed significant increases in incidence of strokes and myocardial infarctions among the intended and targeted population of CELEBREX consumers.  Adequate testing would have shown that CELEBREX possessed serious side effects. Defendants should have taken appropriate measures to ensure that their defectively designed product would not be placed in the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

60.     In fact, post-market approval data did reveal increased risks of clotting, stroke and myocardial infarction, but Defendants intentionally suppressed this information in order for them to gain significant profits from continued CELEBREX sales.

61.     Defendants' failure to conduct adequate testing and/or additional testing prior to market launch was based upon their desire to generate maximum financial gains for themselves and to gain a significant market share in the lucrative multi-billion dollar COX-2 inhibitor market.

62.     At the time Defendants manufactured, advertised, and distributed CELEBREX to consumers, Defendants intentionally or recklessly ignored and/or withheld information regarding the increased risks of hypertension, stroke and/or myocardial infarctions because Defendants knew that if such increased risks were disclosed, consumers would not purchase CELEBREX, but instead would purchase other cheaper and safer NSAIDs.

### E.  **Facts Regarding Defendants' Marketing And Sale Of CELEBREX**

63.  Such an ineffective and unreasonably dangerous drug could only be widely prescribed as a result of a tremendous marketing campaign.  In addition to being aggressive, the Defendants' marketing campaign was fraudulent and misleading.  But for fraudulent and misleading advertising, consumers, including the Plaintiff, would not have purchased CELEBREX, a more costly prescriptive drug, ineffective for its intended purposes.

64.  Defendant's marketing was so fraudulent that the FDA issued three Warning Letters to Defendants in October 1999, April 2000, and November 2000, all finding that Defendants were unlawfully making false or misleading statements concerning the safety and/or efficacy of CELEBREX.  The November letter cited two direct-to-consumer television advertisements that overstated the efficacy of CELEBREX.  The FDA ordered that SEARLE immediately cease distribution of the misleading ads.

65.  On February 2001, the FDA issued a Warning Letter to PHARMACIA stating that promotional activities from marketing CELEBREX were unlawful because they were "false, lacking in fair balance, or otherwise misleading."  The FDA found that CELEBREX had been promoted for unapproved uses, in unapproved dosing regiments, and that the marketers had made unsupportable claims that CELEBREX was safer and more effective than other NSAIDs.

66.  In August 2001, it was revealed that PHARMACIA had misrepresented the results of a post-marketing clinical study of CELEBREX when submitting it for publication. PHARMACIA selectively omitted portions of the data relating to adverse effects.  The *Washington Post* reported on August 5, 2001 that, "the study had lasted a year, not six months as . . .thought.  Almost all of the ulcer complications that occurred during the second have of the study were in CELEBREX users.  When all of the data were considered, most of CELEBREX's apparent safety advantage[as compared to traditional NSAIDs] disappeared."

67.  On January 10, 2005 the FDA again issued PFIZER a written reprimand for its promotional activities. The reprimand reads: "These five promotional pieces [3 CELEBREX and 2 Bextra] variously: omit material facts … and make misleading safety, unsubstantiated

- 17 -

superiority, and unsubstantiated effectiveness claims." Amid continued frustration with PFIZER's continually misleading marketing strategy and ever surmounting evidence of cardiovascular dangers, the FDA Advisory Panel voted overwhelmingly that the company should never again advertise the drug [CELEBREX]."

68.     At all times relevant herein, Defendants engaged in a marketing campaign with the intent that consumers would perceive CELEBREX as a safer and better drug than its other NSAIDs and, therefore, purchase CELEBREX.

69.     Defendants widely and successfully marketed CELEBREX throughout the United States by, among other things, conducting promotional campaigns that misrepresented the efficacy of CELEBREX in order to induce a widespread use and consumption. CELEBREX was represented to aid the pain and discomfort of arthritis, osteoarthritis, and related problems. Defendants made misrepresentations by means of media advertisements, and statements contained in sales literature provided to Plaintiff's prescribing physicians.

70.     Despite knowledge of the dangers presented by CELEBREX, Defendants and Defendants' predecessors in interest, through their officers, directors and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of CELEBREX and failed to warn the public, including Plaintiff, of the serious risk of injury occasioned by the defects inherent in CELEBREX. Defendants and their officers, agents and managers intentionally proceeded with the inadequate safety testing, and then the manufacturing, sale and marketing of CELEBREX, knowing that persons would be exposed to serious potential danger, in order to advance their own pecuniary interests. Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the public and particularly of Plaintiff.

71.     In an elaborate and sophisticated manner, Defendants aggressively marketed CELEBREX directly to consumers and medical professionals (including physicians and leading medical scholars) in order to leverage pressure on third party payors, medical care organizations, and large institutional buyers (*e.g.*, hospitals) to include CELEBREX on their formularies.

Faced with the increased demand for the drug by consumers and health care professionals that resulted from Defendants' successful advertising and marketing blitz, third party payors were compelled to add CELEBREX to their formularies. Defendants' marketing campaign specifically targeted third party payors, physicians, and consumers, and was designed to convince them of both the therapeutic and economic value of CELEBREX.

72. Defendants represented that CELEBREX was similar to ibuprofen and naproxen but was superior because it lacked any of the common gastrointestinal adverse side effects associated with these and other non-steroidal anti-inflammatory drugs ("NSAIDS"). Defendants promoted CELEBREX as a safe and effective alternative that would not have the same deleterious and painful impact on the gut, but that would be just as effective, if not more so, for pain relief.

73. Yet, CELEBREX possessed dangerous and concealed or undisclosed side effects, including the increased risk of serious cardiovascular events, such as heart attacks, unstable angina, cardiac clotting, deep vein thrombosis, hypertension, and cerebrovascular events, such as strokes. In addition, CELEBREX, which is significantly more expensive than traditional NSAIDs[2], was actually no more effective than traditional and less expensive NSAIDs and, just like traditional NSAIDs, carried a risk of perforations, ulcers, and gastrointestinal bleeding. Yet, Defendants chose not to warn about these risks and dangers.

74. Defendants knew of these risks before the U.S. Food and Drug Administration (the "FDA") approved CELEBREX for sale, but Defendants ignored, downplayed, suppressed, omitted, and concealed these serious safety risks and denied inefficacy in its promotion, advertising, marketing, and sale of CELEBREX. Defendants' omission, suppression, and concealment of this important information enabled CELEBREX to be sold to, and purchased, or paid for by, the Consumers at a grossly inflated price.

---

[2] The cost of Celebrex is at least $3-$6 per day, while an over-the-counter NSAID can cost $.50 or less per day.

75.     Consequently, CELEBREX captured a large market share of anti-inflammatory drugs prescribed for and used by patients. In 2004 alone, sales of CELEBREX exceeded $2 billion, despite the significantly higher cost of CELEBREX as compared to other pain relievers in the same family of drugs.

76.     Because Defendants engaged in a promotional and marketing campaign that featured an advertising blitz directly targeted to consumers, that touted CELEBREX as a safer drug than other drugs in its class, while uniformly failing to disclose the health risks of CELEBREX, Defendants were able to justify pricing CELEBREX significantly higher than the cost of generic aspirin. In reality, that price inflation was not justified. Had Defendants disclosed the truth about CELEBREX, Defendants would not and could not have reaped the billions of dollars in CELEBREX sales that were achieved as a direct result of the concealment, omission, suppression, and obfuscation of the truth.

77.     The Defendants intentionally, deliberately, knowingly, and actively concealed, omitted, suppressed, and obfuscated important and material information regarding the risks, dangers, defects, and disadvantages of CELEBREX from Plaintiff, the public, the medical community, and the regulators. This concealment and omission was deliberate, knowing, active, and uniform, was intended to induce and maximize sales and purchases of CELEBREX, and prevented Plaintiff from obtaining all the material information that would be important to her in making a decision as a reasonable person to purchase, pay for, and/or use CELEBREX.

78.     Defendants' systematic, active, knowing, deliberate, and uniform concealment, omissions, suppression, and conduct caused Plaintiff to purchase, pay for, and/or use CELEBREX; and caused Plaintiff's losses and damages as asserted herein.

79.     Had Defendants done adequate testing prior to approval and "market launch," the defendants' scientific data would have revealed significant increases in stroke and myocardial infarction amongst the intended population of CELEBREX consumers. Adequate testing would have shown that CELEBREX possessed serious side effects. Defendants should have taken appropriate measures to ensure that their defectively designed product would not be placed in the

stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

80.     In fact, post-market approval data did reveal increased risks of clotting, stroke and myocardial infarction, but Defendants intentionally suppressed this information in order for them to gain significant profits from continued CELEBREX sales.

81.     Defendants' failure to conduct adequate testing and/or additional testing prior to "market launch," and active concealment and failure to warn the medical community and general public of the known cardiovascular risks of CELEBREX was particularly negligent, reckless and/or malicious given the drug's known target market.   Defendants were well aware that most patients taking CELEBREX are elderly and have higher risk of developing cardiovascular risks to begin with.  Nearly half of the patients with arthritis have coexisting cardiovascular disease, and most patients, as discovered in the CLASS study, were prone to higher dosing.

82.     Defendants' failure to conduct adequate testing and/or additional testing prior to "market launch" was based upon their desire to generate maximum financial gains for themselves and to gain a significant market share in the lucrative multi-billion dollar COX-2 inhibitor market.

83.     At the time Defendants manufactured, advertising, and distributed CELEBREX to consumers including Plaintiff, Defendants intentionally or recklessly ignored and/or withheld information regarding the increased risks of hypertension, stroke and/or myocardial infarctions because Defendants knew that if such increased risks were disclosed, consumers would not purchase CELEBREX, but instead would purchase other cheaper and safer NSAID drugs.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Negligence

84.     Plaintiff incorporates by reference all of the paragraphs of this Complaint as if fully set forth herein.

85.     Defendants owed Plaintiff a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling CELEBREX.  This duty included the duty not to introduce a pharmaceutical drug, such as CELEBREX, into the stream of commerce that caused users to suffer from unreasonable, dangerous or untoward adverse side effects.

86.     At all relevant times to this action, Defendants owed a duty to properly warn Plaintiff and the Public of the risks, dangers and adverse side effects of their pharmaceutical drug CELEBREX.

87.     Defendants breached their duties by failing to exercise ordinary care in the preparation, design, research, testing, development, manufacturing, inspection, labeling, marketing, promotion, advertising and selling of CELEBREX, including:

        (a)     failing to use due care in the preparation and development of CELEBREX to prevent the aforementioned risk of injuries to individuals when the drugs were ingested;

        (b)     failing to use due care in the design of CELEBREX to prevent the aforementioned risk of injuries to individuals when the drugs were ingested;

        (c)     failing to conduct adequate pre-clinical testing and research to determine the safety of CELEBREX;

        (d)     failing to conduct adequate post-marketing surveillance and exposure studies to determine the safety of CELEBREX;

        (e)     failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiff, consumers, the medical community, and the FDA;

        (f)     failing to accompany CELEBREX with proper warnings regarding all possible adverse side effects associated with the use of CELEBREX;

        (g)     failing to use due care in the manufacture, inspection, and labeling of CELEBREX to prevent the aforementioned risk of injuries to individuals who used CELEBREX;

(h)     failing to use due care in the promotion of CELEBREX to prevent the aforementioned risk of injuries to individuals when the drugs were ingested;

(i)     failing to use due care in the sale and marketing of CELEBREX to prevent the aforementioned risk of injuries to individuals when the drugs were ingested;

(j)     failing to use due care in the selling of CELEBREX to prevent the aforementioned risk of injuries to individuals when the drugs were ingested;

(k)     failing to provide adequate and accurate training and information to the sales representatives who sold CELEBREX;

(l)     failing to provide adequate and accurate training and information to healthcare providers for the appropriate use of CELEBREX; and

(m)     being otherwise reckless, careless and/or negligent.

88.     Despite the fact that Defendants knew or should have known that CELEBREX caused unreasonable and dangerous side effects which many users would be unable to remedy by any means, Defendants continued to promote and market CELEBREX to consumers, including Plaintiff, when safer and more effective methods of pain relief were available.

89.     Defendants were, or should have been had they exercised reasonable care, in possession of evidence demonstrating that CELEBREX caused serious side effects. Nevertheless, they continued to market their products by providing false and misleading information with regard to the safety and efficacy of CELEBREX.

90.     Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injuries as a result of their failure to exercise ordinary care as described above.

91.     As a direct and proximate consequence of Defendants' acts, omissions, and misrepresentations described herein, the Plaintiff, sustained a heart attack; has required and will require healthcare and services; has incurred and will continue to incur medical and related expenses; has suffered loss of wages and a diminished capacity to earn wages in the future; has suffered and will continue to suffer mental anguish, diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting

conditions and activation of latent conditions, and other such damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff will continue to incur such losses in the future.

92. Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants and seeks compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### Strict Liability

93. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleged as follows:

94. At all times relevant to this action, Defendants were suppliers of CELEBREX, placing the drug into the stream of commerce. CELEBREX was expected to and did reach Plaintiff without substantial change in the condition in which it was manufactured and sold.

95. CELEBREX was unsafe for normal or reasonably anticipated use.

96. CELEBREX was defective in design or formulation because when it left the hands of the manufacturer and/or supplier, it was unreasonably dangerous and more dangerous than an ordinary consumer would expect. CELEBREX was also defective and unreasonably dangerous in that the foreseeable risk of injuries from CELEBREX exceeded the benefits associated with the design and/or formulation of the product.

97. CELEBREX is unreasonably dangerous: (a) in construction or composition; (b) in design; (c) because an adequate warning about the product was not provided; (d) because it does not conform to an express warranty of the manufacturer about the product.

98.     CELEBREX as manufactured and supplied by Defendants was also defective due to inadequate warnings, and/or inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study. Defendants failed to perform adequate testing before exposing Plaintiff to the medication, testing which would have shown that CELEBREX had the potential to cause serious side effects including the injuries suffered like the Plaintiff.

99.     CELEBREX as manufactured and supplied by Defendants was defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of injuries from CELEBREX, they failed to provide adequate warnings to the medical community and the consumers, to whom they were directly marketing and advertising CELEBREX; and, further, it continued to affirmatively promote CELEBREX as safe and effective.

100.    CELEBREX was manufactured, distributed, tested, sold, marketed, advertised and promoted defectively by Defendants, and as a direct and proximate cause of Defendants' defective design of CELEBREX, Plaintiff used CELEBREX rather than other safer and cheaper NSAIDs. As a result, Plaintiff suffered the personal injuries described herein.

101.    Information given by Defendants to the medical community and to the consumers concerning the safety and efficacy of CELEBREX, especially the information contained in the advertising and promotional materials did not accurately reflect the potential side effects of CELEBREX.

102.    Had adequate warnings and instructions been provided, Plaintiff would not have taken CELEBREX, and would not have been at risk of the harmful side effects described herein.

103.    Defendants acted with conscious and deliberate disregard of the foreseeable harm caused by CELEBREX.

104.    Plaintiff could not, through the exercise of reasonable care, have discovered CELEBREX's defects or perceived the dangers posed by the drug.

105.    As a direct and proximate consequence of Defendants' acts, omissions, and misrepresentations described herein, the Plaintiff sustained a heart attack; has required and will require healthcare and services; has incurred and will continue to incur medical and related expenses; has suffered loss of wages and a diminished capacity to earn wages in the future; has suffered and will continue to suffer mental anguish, diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other such damages.  Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies.  Plaintiff will continue to incur such losses in the future.

106.    Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants and seeks compensatory damages, and punitive and exemplary damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### Breach of Express Warranty

105.    Plaintiff incorporates by reference all of the paragraphs of this Complaint as if fully set forth herein.

106.    Defendants expressly represented to Plaintiff and other consumers and the medical community that CELEBREX was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, particularly any unwarned-of side effects, and that it was adequately tested.

107.    These warranties came in the form of:

(a)    Defendants' public written and verbal assurances of the safety and efficacy of CELEBREX;

- 26 -

(b)     Press releases, interviews and dissemination via the media of promotional information, the sole purpose of which was to create an increased demand for CELEBREX, which failed to warn of the risk of injuries inherent to the ingestion of CELEBREX, especially to the long-term ingestion of CELEBREX;

(c)     Verbal and written assurances made by Defendants regarding CELEBREX and downplaying the risk of injuries associated with the drug;

(d)     False and misleading written information, supplied by Defendants, and published in the Physician's Desk Reference on an annual basis, upon which physicians relied in prescribing CELEBREX during the period of Plaintiff's ingestion of CELEBREX, and;

(e)     advertisements.

108.    The documents referred to above were created by and at the direction of Defendants.

109.    Defendants knew or had reason to know that CELEBREX did not conform to these express representations in that CELEBREX is neither as safe nor as effective as represented, and that CELEBREX produces serious adverse side effects.

110.    CELEBREX did not and does not conform to Defendants' express representations because it is not safe, has numerous and serious side effects, including unwarned-of side effects, and causes severe and permanent injuries.

111.    Plaintiff, other consumers, and the medical community relied upon Defendants' express warranties.

112.    As a direct and proximate consequence of Defendants' acts, omissions, and misrepresentations described herein, the Plaintiff sustained a heart attack; has required and will require healthcare and services; has incurred and will continue to incur medical and related expenses; has suffered loss of wages and a diminished capacity to earn wages in the future; has suffered and will continue to suffer mental anguish, diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other such damages. Plaintiff's direct medical

losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff will continue to incur such losses in the future.

113.    Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants and seeks compensatory damages, and punitive and exemplary damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### Breach of Implied Warranty

114.    Plaintiff incorporates by reference all of the paragraphs of this Complaint as if fully set forth herein.

115.    Defendants manufactured, distributed, advertised, promoted, and sold CELEBREX.

116.    At all relevant times, Defendants knew of the use for which CELEBREX was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

117.    CELEBREX was not of merchantable quality and was not fit for its intended use, because it causes increased risk of serious cardiovascular, cerebrovascular adverse events, and skin reactions, including heart attacks, strokes, a heart attack and other serious and harmful adverse health effects, such as death.

118.    Defendants breached the implied warranty that CELEBREX was of merchantable quality and fit for such use.

119.    Defendants were aware that consumers, including Plaintiff, would use CELEBREX for treatment of pain and inflammation and for other purposes.

120.    Plaintiff and the medical community reasonably relied upon Defendants' judgment and expertise to only sell them or allow them to prescribe CELEBREX only if it was indeed of merchantable quality and safe and fit for its intended use. Consumers, including Plaintiff, and the medical community, reasonably relied upon Defendants' implied warranty for CELEBREX.

121.    CELEBREX reached consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendants.

122.    Defendants breached their implied warranty to consumers, including Plaintiff; CELEBREX was not of merchantable quality or safe and fit for its intended use.

123.    As a direct and proximate consequence of Defendants' acts, omissions, and misrepresentations described herein, the Plaintiff sustained a heart attack; has required and will require healthcare and services; has incurred and will continue to incur medical and related expenses; has suffered loss of wages and a diminished capacity to earn wages in the future; has suffered and will continue to suffer mental anguish, diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other such damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff will continue to incur such losses in the future.

124.    Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers,

including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants and seeks compensatory damages and punitive and exemplary damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF
### Fraudulent Misrepresentation & Concealment

125.    Plaintiff incorporates by reference all of the paragraphs of this Complaint as if fully set forth herein.

126.    Defendants' superior knowledge and expertise, their relationship of trust and confidence with doctors and the public, their specific knowledge regarding the risks and dangers of CELEBREX, and their intentional dissemination of promotional and marketing information about CELEBREX for the purpose of maximizing its sales, each gave rise to the affirmative duty to meaningfully disclose and provide all material information about CELEBREX's risks and harms to doctors and consumers.

127.    Defendants made fraudulent affirmative misrepresentations with respect to CELEBREX in the following particulars:

(a)    Defendants represented through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that CELEBREX had been tested and found to be safe and effective for the treatment of pain and inflammation; and

(b)    Defendants represented that CELEBREX was safer than other alternative medications.

128.   Defendants made affirmative misrepresentations; and fraudulently, intentionally and/or recklessly concealed material adverse information regarding the safety and effectiveness of CELEBREX.

129.   Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or had reason to know that CELEBREX had defects and was unreasonably dangerous and was not what Defendants had represented to the medical community, the FDA and the consuming public, including Plaintiff.

130.   Defendants omitted, suppressed and/or concealed material facts concerning the dangers and risk of injuries associated with the use of CELEBREX including, but not limited to, the cardiovascular, cerebrovascular, serious skin reactions, and other serious health risks. Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of CELEBREX in order to increase its sales.

131.   The representations and concealment were undertaken by Defendants with an intent that doctors and patients, including Plaintiff, rely upon them.

132.   Defendants' representations and concealments were undertaken with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of CELEBREX.

133.   Defendants' fraudulent representations evinced their callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

134.   Plaintiff's physicians and Plaintiff relied on and were induced by Defendants' misrepresentations, omissions, and/or active concealment of the dangers of CELEBREX in selecting CELEBREX treatment.

135.   Plaintiff and the treating medical community did not know that the representations were false and were justified in relying upon Defendants' representations.

136.    Had Plaintiff been aware of the increased risk of side effects associated with CELEBREX and the relative efficacy of CELEBREX compared with other readily available medications, Plaintiff would not have taken CELEBREX as she did.

137.    As a direct and proximate consequence of Defendants' acts, omissions, and misrepresentations described herein, the Plaintiff sustained a heart attack; has required and will require healthcare and services; has incurred and will continue to incur medical and related expenses; has suffered loss of wages and a diminished capacity to earn wages in the future; has suffered and will continue to suffer mental anguish, diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other such damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff will continue to incur such losses in the future.

138.    Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants and seeks compensatory damages, and punitive and exemplary damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

### SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment)

139.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

140.    At all times relevant to this action, Defendants were the manufacturers, sellers, and/or suppliers of CELEBREX.

141.    Plaintiff paid for CELEBREX for the purpose of managing her pain safely and effectively.

142.    Defendants have accepted payment from Plaintiff for the purchase of CELEBREX.

143.    Plaintiff did not receive the safe and effective pharmaceutical product for which she paid.

144.    It is inequitable and unjust for Defendants to retain this money because the Plaintiff did not in fact receive the product Defendant represented CELEBREX to be.

WHEREFORE, Plaintiff demands judgment against Defendants and seeks equitable relief, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1.      General damages in excess of the jurisdictional amount of this Court;

2.      Consequential damages;

3.      Disgorgement of profits;

4.      Restitution;

5.      Punitive and exemplary damages;

6.      Pre-judgment and post-judgment interest as provided by law;

7.      Recovery of Plaintiff's costs including, but not limited to, discretionary Court costs of these causes, and those costs available under the law, as well as expert fees and attorneys' fees and expenses, and costs of this action; and

8.      Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

COMES NOW Plaintiff and demands a trial by jury on all issues presented herein.

Signed this _____ day of April, 2008.

Ted G. Meadows (MN # 0335836)
Andy D. Birchfield, Jr. (AL # BIR006)
Navan Ward, Jr. (AL # WAR062)
Frank Woodson (AL #WOO034)
Beasley, Allen, Crow,
Methvin, Portis, & Miles, P.C.
234 Commerce Street
Montgomery, Alabama 36104
Telephone:     334-269-2343
Facsimile:     334 – 954-7555
ATTORNEYS FOR PLAINTIFF

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
VELMA BURT

## DEFENDANTS
PFIZER, INC., et al.

(b) County of Residence of First Listed Plaintiff    Phenix City, Alabama
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    New York
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Ted G. Meadows, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.,
P.O. Box 4160, Montgomery, AL 36103-4160; (334) 269-2343

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C.A. 1332
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
4/3/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **VELMA BURT,** | **Case No.: 08-CV-00953-PJS/JJG** |
| **Plaintiff,** | |
| **v.** | **DEFENDANTS PFIZER INC., PHARMACIA CORPORATION, AND G.D. SEARLE LLC'S ANSWER TO PLAINTIFF'S COMPLAINT** |
| **PFIZER INC., PHARMACIA CORPORATION, G.D. SEARLE LLC, and MONSANTO COMPANY,** | |
| **Defendants.** | **Jury Trial Demanded** |

NOW COME Defendants Pfizer Inc. (improperly captioned in Plaintiff's Complaint as "Pfizer, Inc.") ("Pfizer"), Pharmacia Corporation (f/k/a Monsanto Company[1]) ("Pharmacia") and G.D. Searle LLC ("Searle") and file this Answer to Plaintiff's Complaint ("Complaint"), and would respectfully show the Court as follows:

### I.
### PRELIMINARY STATEMENT

The Complaint does not state in sufficient detail when Plaintiff was prescribed or used Celebrex® (celocoxib) ("Celebrex®"). Accordingly, this Answer can only be drafted generally. Defendants may seek leave to amend this Answer when discovery reveals the specific time periods in which Plaintiff was prescribed and used Celebrex®.

---

[1] Plaintiff's Complaint names "Monsanto Company" as a Defendant. Defendants state that in 1933, an entity known as Monsanto Company ("1933 Monsanto") was incorporated under the laws of Delaware. On March 31, 2000, 1933 Monsanto changed its name to Pharmacia Corporation. On February 9, 2000, a separate company, Monsanto Ag Company, was incorporated under the laws of Delaware. On March 31, 2000, Monsanto Ag Company changed its name to Monsanto Company ("2000 Monsanto"). The 2000 Monsanto is engaged in the agricultural business and does not and has not ever designed, produced, manufactured, sold, resold, or distributed Celebrex®. Given that Plaintiff alleges in the Complaint that Monsanto Company was involved in distributing Celebrex®, *see* PLAINTIFF'S COMPLAINT at ¶ 7, Defendants assume Plaintiff means to refer to 1933 Monsanto. As a result, Pharmacia will respond to the allegations directed at Monsanto Company.

## II.

## ORIGINAL ANSWER

### Response to Allegations Regarding Parties

1.      Defendants admit that Plaintiff brought this civil action seeking monetary damages, but deny that Plaintiff is entitled to any relief or damages.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

2.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's age or state of residence and, therefore, deny the same.

3.      Defendants admit that Pfizer, Pharmacia, and Searle do business in the State of Minnesota.  Defendants state that the remaining allegations in this paragraph of the Complaint assert legal contentions to which no response is required.  To the extent that a response is deemed required, Defendants deny the remaining allegations in this paragraph of the Complaint.

4.      Defendants admit that Pfizer is a Delaware corporation with its principal place of business in New York.  Defendants admit that Pfizer is registered to do business in the State of Minnesota.  Defendants admit that Pfizer may be served through its registered agent.  Defendants admit that Pharmacia acquired Searle in 2000 and that, as the result of a merger in April 2003, Searle and Pharmacia became subsidiaries of Pfizer.  Defendants admit that, during certain periods of time, Pfizer and Pharmacia co-promoted and marketed Celebrex® in the United States, including Minnesota, to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendants state that Plaintiff's allegations regarding "predecessors in interest" are vague and ambiguous.  Defendants are without knowledge or information to form a belief as to the truth of such allegations, and,

-2-

therefore, deny the same. Defendants deny the remaining allegations in this paragraph of the Complaint.

5.     Defendants admit that Searle is a Delaware limited liability company with its principal place of business in Illinois. Defendants admit that Pharmacia acquired Searle in 2000 and that, as the result of a merger in April 2003, Searle and Pharmacia became subsidiaries of Pfizer. Defendants admit that, during certain periods of time, Celebrex® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants deny the remaining allegations in this paragraph of the Complaint.

6.     Defendants admit that Pharmacia is a Delaware corporation with its principal place of business in New Jersey. Defendants admit that Pharmacia acquired Searle in 2000 and that, as the result of a merger in April 2003, Searle and Pharmacia became subsidiaries of Pfizer. Defendants admit that, during certain periods of time, Pharmacia marketed and co-promoted Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants deny the remaining allegations in this paragraph of the Complaint.

7.     Defendants admit that in 1933 an entity known as Monsanto Company ("1933 Monsanto") was incorporated under the laws of Delaware. On March 31, 2000, a subsidiary of 1933 Monsanto merged with Pharmacia & Upjohn, Inc, and 1933 Monsanto changed its name to Pharmacia Corporation. On February 9, 2000, a separate company, Monsanto Ag Company, was incorporated under the laws of Delaware. On March 31, 2000, Monsanto Ag Company changed its name to Monsanto Company ("2000 Monsanto"). The 2000 Monsanto is engaged in the agricultural business and does not and has not ever manufactured, marketed, sold, or distributed Celebrex®. The 2000 Monsanto is not and has never been the parent of either Searle or Pharmacia. As the 2000 Monsanto does not and has not ever manufactured, marketed, sold, or distributed Celebrex®, Defendants therefore state that the 2000 Monsanto is not a proper party in

this matter. Defendants deny the remaining allegations in this paragraph of the Complaint. Defendants state that the response to this paragraph of the Complaint regarding Monsanto is incorporated by reference into Defendants' responses to each and every paragraph of the Complaint referring to Monsanto and/or Defendants.

8.      Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that, during certain periods of time, Celebrex® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that Pharmacia acquired Searle in 2000 and that, as the result of a merger in April 2003, Searle and Pharmacia became subsidiaries of Pfizer. Defendants deny the remaining allegations in this paragraph of the Complaint.

9.      Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that, during certain periods of time, Celebrex® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

10.     Defendants state that the allegations in this paragraph of the Complaint regarding "predecessors in interest" are vague and ambiguous. Defendants are without knowledge or

information sufficient to form a belief as to the truth of such allegations, and, therefore, deny the same. Defendants deny the remaining allegations in this paragraph of the Complaint.

11.     Defendants admit that Pfizer, Pharmacia, and Searle do business in the State of Minnesota. Defendants deny the remaining allegations in this paragraph of the Complaint.

12.     Defendants admit that Pfizer, Pharmacia, and Searle do business in the State of Minnesota. Defendants are without knowledge sufficient to form a belief as to the allegations in this paragraph of the Complaint regarding the amount in controversy, and, therefore, deny the same. However, Defendants admit that Plaintiff claims the amount in controversy satisfies the jurisdictional amount of this Court. Defendants deny the remaining allegations in this paragraph of the Complaint.

### Response to Factual Allegations

13.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's medical condition or whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny that Celebrex® caused Plaintiff injury or damage and deny the remaining allegations in this paragraph of the Complaint.

14.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct, deny that

Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

15.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same.   Defendants state that, in the ordinary case, Celebrex® was expected to reach users and consumers without substantial change from the time of sale.  Defendants deny the remaining allegations in this paragraph of the Complaint.

16.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same.  Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

17.     Defendants state that the allegations in this paragraph of the Complaint regarding aspirin, naproxen, and ibuprofen are not directed toward Defendants, and, therefore, no response is required.  Defendants admit that Celebrex® is in a class of drugs that are, at times, referred to as being a non-steroidal anti-inflammatory ("NSAID") drugs.  Defendants deny the remaining allegations in this paragraph of the Complaint.

18.     Defendants state that the allegations in this paragraph of the Complaint are not directed toward Defendants and, therefore, no response is required.  To the extent that a response is deemed required, Defendants state that Plaintiff fails to provide the proper context for the allegations in this paragraph of the Complaint.  Defendants therefore lack sufficient information or knowledge to form a belief as to the truth of such allegations and, therefore, deny the same.

19.     Defendants state that the allegations in this paragraph of the Complaint are not directed toward Defendants and, therefore, no response is required.  To the extent that a response is

deemed required, Defendants state that Plaintiff fails to provide the proper context for the allegations in this paragraph of the Complaint. Defendants therefore lack sufficient information or knowledge to form a belief as to the truth of such allegations and, therefore, deny the same.

20.     Defendants state that the allegations in this paragraph of the Complaint are not directed toward Defendants and, therefore, no response is required. To the extent that a response is deemed required, Defendants state that Plaintiff fails to provide the proper context for the allegations in this paragraph of the Complaint. Defendants therefore lack sufficient information or knowledge to form a belief as to the truth of such allegations and, therefore, deny the same.

21.     Defendants state that the allegations in this paragraph of the Complaint are not directed toward Defendants and, therefore, no response is required. To the extent a response is deemed required, Defendants state that, as stated in the FDA-approved labeling for Celebrex®, "[t]he mechanism of action of Celebrex is believed to be due to inhibition of prostaglandin synthesis, primarily via inhibition of cyclooxygenase-2 (COX-2), and at therapeutic concentrations in humans, Celebrex does not inhibit the cyclooxygenase-1 (COX-1) isoenzyme." Plaintiff fails to provide the proper context for the remaining allegations in this paragraph and Defendants therefore lack sufficient information or knowledge to form a belief as to the truth of the allegations and, therefore, deny the remaining allegations in this paragraph of the Complaint.

22.     Defendants state that the allegations in this paragraph of the Complaint regarding "predecessors in interest" are vague and ambiguous. Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, deny the same. Defendants state that, as stated in the FDA-approved labeling for Celebrex®, "[t]he mechanism of action of Celebrex is believed to be due to inhibition of prostaglandin synthesis, primarily via inhibition of cyclooxygenase-2 (COX-2), and at therapeutic concentrations in humans, Celebrex does not inhibit the cyclooxygenase-1 (COX-1) isoenzyme." Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times

adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

23.     Defendants admit that Searle submitted a New Drug Application ("NDA") for Celebrex® on June 29, 1998. Defendants admit that, on December 31, 1998, the FDA granted approval of Celebrex® for the following indications: (1) for relief of the signs and symptoms of osteoarthritis; and (2) for relief of the signs and symptoms of rheumatoid arthritis in adults. Defendants admit that, on December 23, 1999, the FDA granted approval of Celebrex® to reduce the number of adenomatous colorectal polyps in familial adenomatous polyposis ("FAP") as an adjunct to usual care (e.g., endoscopic surveillance surgery). Defendants deny the remaining allegations in this paragraph of the Complaint.

24.     Defendants admit that Celebrex® was launched in February 1999. Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that, during certain periods of time, Celebrex® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

25.     Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text. Any attempt to characterize the article is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

26.     Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text.  Any attempt to characterize the article is denied.  Defendants deny the remaining allegations in this paragraph of the Complaint.

27.     Defendants state that the referenced FDA Update speaks for itself and respectfully refer the Court to the FDA Update for its actual language and text.  Any attempt to characterize the FDA Update is denied.  Defendants deny the remaining allegations in this paragraph of the Complaint.

28.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny the allegations in this paragraph of the Complaint.

29.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

30.     Defendants admit that a supplemental NDA for Celebrex® was submitted to the FDA on June 12, 2000.  Defendants assert that the submission speaks for itself and any attempt to characterize it is denied.  Defendants admit that a Medical Officer Review dated September 20, 2000, was completed by the FDA.  Defendants state that the referenced study speaks for itself and respectfully refer the Court to the study for its actual language and text.  Any attempt to characterize the study is denied.  Defendants deny the remaining allegations in this paragraph of the Complaint.

31.     Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text. Any attempt to characterize the article is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

32.     Defendants state that the referenced study speaks for itself and respectfully refer the Court to the study for its actual language and text. Any attempt to characterize the study is denied. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

33.     Defendants state that the referenced Medical Officer Review speaks for itself and respectfully refer the Court to the Medical Officer Review for its actual language and text. Any attempt to characterize the Medical Officer Review is denied. Defendants state that the referenced study speaks for itself and respectfully refer the Court to the study for its actual language and text. Any attempt to characterize the study is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

34.     Defendants state that the transcripts of the FDA Arthritis Drugs Advisory Committee hearings speak for themselves and respectfully refer the Court to the transcripts for their actual language and text. Any attempt to characterize the transcripts is denied. Defendants state that the referenced study speaks for itself and respectfully refer the Court to the study for its actual language and text. Any attempt to characterize the study is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

35.     Defendants state that the referenced articles speak for themselves and respectfully refer the Court to the articles for their actual language and text. Any attempt to characterize the articles is denied. Defendants state that the referenced study speaks for itself and respectfully refer the Court to the study for its actual language and text. Any attempt to characterize the study is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

36.     Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text. Any attempt to characterize the article is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

37.     Defendants state that the referenced articles speak for themselves and respectfully refer the Court to the articles for their actual language and text.  Any attempt to characterize the articles is denied.  Defendants deny the remaining allegations in this paragraph of the Complaint.

38.     Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text.  Any attempt to characterize the article is denied.  Defendants state that the referenced study speaks for itself and respectfully refer the Court to the study for its actual language and text.  Any attempt to characterize the study is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

39.     Defendants state that the referenced Medical Officer Review speaks for itself and respectfully refer the Court to the Medical Officer Review for its actual language and text.  Any attempt to characterize the Medical Officer Review is denied.  Defendants deny the remaining allegations in this paragraph of the Complaint.

40.     Plaintiff fails to provide the proper context for the allegations concerning "Public Citizen" in this paragraph of the Complaint.  Defendants therefore lack sufficient information or knowledge to form a belief as to the truth of such allegations and, therefore, deny the same. Defendants deny the remaining allegations in this paragraph of the Complaint.

41.     Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text.  Any attempt to characterize the article is denied.  Defendants deny the remaining allegations in this paragraph of the Complaint.

42.     Defendants state that the referenced study speaks for itself and respectfully refer the Court to the study for its actual language and text.  Any attempt to characterize the study is denied.  Plaintiff fails to provide the proper context for the allegations concerning "Public Citizen" in this paragraph of the Complaint.  Defendants therefore lack sufficient information or knowledge to form a belief as to the truth of such allegations and, therefore, deny the same. Defendants deny the remaining allegations in this paragraph of the Complaint.

43.     Defendants admit that there was a clinical trial called APC.  Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual

language and text. Any attempt to characterize the article is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

44.     Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text. Any attempt to characterize the article is denied. Plaintiff fails to provide the proper context for the allegations concerning "Data Safety Monitoring Board" in this paragraph of the Complaint. Defendants therefore lack sufficient information or knowledge to form a belief as to the truth of such allegations and, therefore, deny the same. Defendants deny the remaining allegations in this paragraph of the Complaint.

45.     Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text. Any attempt to characterize the article is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

46.     Defendants state that the referenced Alert for Healthcare Professionals speaks for itself and respectfully refer the Court to the Alert for Healthcare Professionals for its actual language and text. Any attempt to characterize the Alert for Healthcare Professionals is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

47.     Defendants state that the referenced Medical Officer Review speaks for itself and respectfully refer the Court to the Medical Officer Review for its actual language and text. Any attempt to characterize the Medical Officer Review is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

48.     Defendants admit that there was a clinical trial called PreSAP. Plaintiff fails to provide the proper context for the allegations concerning "other Celebrex trials" contained in this paragraph of the Complaint. Defendants therefore lack sufficient information or knowledge to form a belief as to the truth of such allegations and, therefore, deny the same. As for the allegations in this paragraph of the Complaint regarding the PreSAP study, Defendants state that the referenced study speaks for itself and respectfully refer the Court to the study for its actual language and text. Any attempt to characterize the study is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

49. Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text. Any attempt to characterize the article is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

50. Plaintiff fails to provide the proper context for the allegations regarding Merck and Vioxx® in this paragraph of the Complaint. Defendants therefore lack sufficient information or knowledge to form a belief as to the truth of such allegations and, therefore, deny the same. Defendants state that the referenced studies speak for themselves and respectfully refer the Court to the studies for their actual language and text. Any attempt to characterize the studies is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

51. Defendants state that the referenced Medical Officer Review speaks for itself and respectfully refer the Court to the Medical Officer Review for its actual language and text. Any attempt to characterize the Medical Officer Review is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

52. Defendants state that allegations regarding Vioxx® in this paragraph of the Complaint are not directed toward Defendants, and therefore no response is required. To the extent that a response is deemed required, Plaintiff fails to provide the proper context for the allegations regarding Vioxx® in this paragraph of the Complaint. Defendants therefore lack sufficient information or knowledge to form a belief as to the truth of such allegations and, therefore, deny the same. Defendants state that the referenced study speaks for itself and respectfully refer the Court to the study for its actual language and text. Any attempt to characterize the study is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

53. Defendants state that allegations regarding Merck and Vioxx® in this paragraph of the Complaint are not directed toward Defendants, and therefore no response is required. To the extent that a response is deemed required, Plaintiff fails to provide the proper context for the allegations regarding Merck and Vioxx® in this paragraph of the Complaint. Defendants therefore lack sufficient information or knowledge to form a belief as to the truth of such allegations and, therefore, deny the same. Defendants state that the referenced study speaks for

itself and respectfully refer the Court to the study for its actual language and text. Any attempt to characterize the study is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

54. Defendants state that allegations regarding Merck and Vioxx® in this paragraph of the Complaint are not directed toward Defendants, and therefore no response is required. To the extent that a response is deemed required, Plaintiff fails to provide the proper context for the allegations regarding Merck and Vioxx® in this paragraph of the Complaint. Defendants therefore lack sufficient information or knowledge to form a belief as to the truth of such allegations and, therefore, deny the same. Defendants state that the referenced study speaks for itself and respectfully refer the Court to the study for its actual language and text. Any attempt to characterize the study is denied. Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text. Any attempt to characterize the article is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

55. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants deny the allegations in this paragraph of the Complaint.

56. Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text. Any attempt to characterize the article is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

57. Defendants state that allegations in this paragraph of the Complaint are not directed toward Defendants, and therefore no response is required. To the extent that a response is deemed required, Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text. Any attempt to characterize the article is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

58. Defendants deny the allegations in this paragraph of the Complaint.

-14-

59.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct, deny that Celebrex® is defective, and deny the remaining allegations contained in this paragraph of the Complaint.

60.     Defendants deny any wrongful conduct and deny the remaining allegations contained in this paragraph of the Complaint.

61.     Defendants deny any wrongful conduct and deny the remaining allegations contained in this paragraph of the Complaint.

62.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations contained in this paragraph of the Complaint.

63.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same.  Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct, deny that Celebrex® is unreasonably dangerous, and deny the remaining allegations in this paragraph of the Complaint.

64.     Defendants admit that the FDA Division of Drug Marketing, Advertising, and Communications ("DDMAC") sent letters to Searle dated October 6, 1999, April 6, 2000, and

November 14, 2000. Defendants state that the referenced letters speak for themselves and respectfully refer the Court to the letters for their actual language and text. Any attempt to characterize the letters is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

65. Defendants admit that the DDMAC sent a letter to Pharmacia dated February 1, 2001. Defendants state that the referenced letter speaks for itself and respectfully refer the Court to the letter for its actual language and text. Any attempt to characterize the letter is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

66. Defendants state that the referenced article speaks for itself and respectfully refer the Court to the article for its actual language and text. Any attempt to characterize the article is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

67. Defendants admit that the DDMAC sent a letter to Pfizer dated January 10, 2005. Defendants state that the referenced letter speaks for itself and respectfully refer the Court to the letter for its actual language and text. Any attempt to characterize the letter is denied. Defendants deny the remaining allegations in this paragraph of the Complaint.

68. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that, during certain periods of time, Celebrex® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants deny the remaining allegations in this paragraph of the Complaint.

-16-

69.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendants admit that, during certain periods of time, Celebrex® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendants state that Celebrex® is a prescription medication which is approved by the FDA for the following indications: (1) for relief of the signs and symptoms of osteoarthritis; (2) for relief of the signs and symptoms of rheumatoid arthritis in adults; (3) for the management of acute pain in adults; (4) for the treatment of primary dysmenorrhea; (5) to reduce the number of adenomatous colorectal polyps in familial adenomatous polyposis (FAP) as an adjunct to usual care (e.g., endoscopic surveillance surgery); (6) for relief of signs and symptoms of ankylosing spondylitis; and (7) for relief of the signs and symptoms of juvenile rheumatoid arthritis in patients two years of age and older.  Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

70.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which at all times was adequate and comported with applicable standards of care and law. Defendants state that Plaintiff's allegations regarding "predecessors in interest" are vague and ambiguous.  Defendants are without knowledge or information to form a belief as to the truth of such allegations, and, therefore, deny the same.  Defendants deny any wrongful conduct, deny

that Celebrex® is defective, and deny the remaining allegations in this paragraph of the Complaint.

71. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that, during certain periods of time, Celebrex® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants deny the remaining allegations in this paragraph of the Complaint.

72. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which at all times was adequate and comported with applicable standards of care and law. Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that, during certain periods of time, Celebrex® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants deny the remaining allegations in this paragraph of the Complaint.

73.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

74.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

75.     Defendants deny the allegations in this paragraph of the Complaint.

76.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

77.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

78.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used

Celebrex®, and, therefore, deny the same. Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

79. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct, deny that Celebrex® is defective, and deny the remaining allegations in this paragraph of the Complaint.

80. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® are and were adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

81. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® are and were adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants state that the referenced study speaks for itself and respectfully refer the Court to the study for its actual language and text. Any attempt to characterize the study is denied. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

82. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

83. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used

Celebrex®, and, therefore, deny the same.  Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® are and were adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

### Response to First Cause of Action: Negligence

84.    Defendants incorporate by reference their responses to each paragraph of Plaintiff's Complaint as if fully set forth herein.

85.    Defendants state that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendants admit that they had duties as are imposed by law but deny having breached such duties.  Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

86.    Defendants state that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendants admit that they had duties as are imposed by law but denies having breached such duties.  Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

87.    Defendants state that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendants admit that

they had duties as are imposed by law but deny having breached such duties. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint, including all subparts.

88. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

89. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

90. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants

state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

91.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's medical condition or whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

92.     Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

Answering the unnumbered paragraph following Paragraph 92 of the Complaint, Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

### Response to Second Cause of Action: Strict Liability

93.     Defendants incorporate by reference their responses to each paragraph of Plaintiff's Complaint as if fully set forth herein.

94.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that, during certain periods of time, Celebrex® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants state that, in the ordinary case, Celebrex® was expected to reach users and consumers without

substantial change from the time of sale. Defendants deny the remaining allegations in this paragraph of the Complaint.

95.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny the remaining allegations in this paragraph of the Complaint.

96.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct, deny that Celebrex® is defective or unreasonably dangerous, and deny the remaining allegations in this paragraph of the Complaint.

97.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct, deny that Celebrex® is defective or unreasonably dangerous, and deny the remaining allegations in this paragraph of the Complaint.

98.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct, deny that Celebrex® is defective, and deny the remaining allegations in this paragraph of the Complaint.

99.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of

Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct, deny that Celebrex® is defective, and deny the remaining allegations in this paragraph of the Complaint.

100.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same.  Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct, deny that Celebrex® is defective, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

101.    Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

102.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same.  Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct, deny that

Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

103. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

104. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint

105. Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

106. Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

Answering the unnumbered paragraph following Paragraph 106 of the Complaint, Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

### Response to Third Cause of Action: Breach of Express Warranty

105. Answering the second Paragraph 105 of the Complaint, Defendants incorporate by reference their responses to each paragraph of Plaintiff's Complaint as if fully set forth herein.

-26-

106. Answering the second Paragraph 106 of the Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants admit to providing FDA-approved prescribing information for Celebrex®. Defendants deny the remaining allegations in this paragraph of the Complaint.

107. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants admit to providing FDA-approved prescribing information for Celebrex®. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint, including all subparts.

108. Defendants admit to providing FDA-approved prescribing information for Celebrex®. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

109. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

-27-

110.    Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

111.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants admit to providing FDA-approved prescribing information for Celebrex®. Defendants deny the remaining allegations in this paragraph of the Complaint.

112.    Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

113.    Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

Answering the unnumbered paragraph following Paragraph 113 of the Complaint, Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

### Response to Fourth Cause of Action: Breach of Implied Warranty

114.    Defendants incorporate by reference their responses to each paragraph of Plaintiff's Complaint as if fully set forth herein.

115.    Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that, during certain periods of time, Celebrex® was manufactured and packaged for Searle,

which developed, tested, marketed, co-promoted and distributed Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants deny the remaining allegations in this paragraph of the Complaint.

116. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants admit to providing FDA-approved prescribing information for Celebrex®. Defendants deny the remaining allegations in this paragraph of the Complaint.

117. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny the remaining allegations in this paragraph of the Complaint.

118. Defendants state that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent that a response is deemed required, Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

119. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® is a prescription medication which is approved by the FDA for the following indications: (1) for relief of the signs and symptoms of osteoarthritis; (2) for relief of the signs and symptoms of rheumatoid arthritis

in adults; (3) for the management of acute pain in adults; (4) for the treatment of primary dysmenorrhea; (5) to reduce the number of adenomatous colorectal polyps in familial adenomatous polyposis (FAP) as an adjunct to usual care (e.g., endoscopic surveillance surgery); (6) for relief of signs and symptoms of ankylosing spondylitis; and (7) for relief of the signs and symptoms of juvenile rheumatoid arthritis in patients two years of age and older. Defendants deny the remaining allegations in this paragraph of the Complaint.

120.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants admit to providing FDA-approved prescribing information for Celebrex®. Defendants deny the remaining allegations in this paragraph of the Complaint.

121.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that, in the ordinary case, Celebrex® was expected to reach users and consumers without substantial change from the time of sale. Defendants deny the remaining allegations in this paragraph of the Complaint.

122.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with

applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

123.    Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

124.    Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

Answering the unnumbered paragraph following Paragraph 124 of the Complaint, Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

**Response to Fifth Cause of Action: Fraudulent Misrepresentation and Concealment**

125.    Defendants incorporate by reference their responses to each paragraph of Plaintiff's Complaint as if fully set forth herein.

126.    Defendants state that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent that a response is deemed required, Defendants admit that they had duties as are imposed by law but deny having breached such duties. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

127.    Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint, including all subparts.

128.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint, including all subparts.

129.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same.  Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint, including all subparts.

130.     Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

131.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same.  Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with

applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

132. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

133. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

134. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

135. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

136. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same. Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

137. Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

138. Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

Answering the unnumbered paragraph following Paragraph 138 of the Complaint, Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

## **Response to Sixth Cause of Action: Unjust Enrichment**

139. Defendants incorporate by reference their responses to each paragraph of Plaintiff's Complaint as if fully set forth herein.

140.     Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendants admit that, during certain periods of time, Celebrex® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Celebrex® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendants deny the remaining allegations in this paragraph of the Complaint.

141.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same.  Defendants deny the remaining allegations in this paragraph of the Complaint.

142.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same.  Defendants deny the remaining allegations in this paragraph of the Complaint.

143.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same.  Defendants state that Celebrex® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

144.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Celebrex®, and, therefore, deny the same.  Defendants state that Celebrex® was and is safe and

effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Celebrex® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

Answering the unnumbered paragraph following Paragraph 144 of the Complaint, Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

### Response to Prayer For Relief

Answering the unnumbered paragraph of the Complaint headed "Prayer for Relief," Defendants deny any wrongful conduct, deny that Celebrex® caused Plaintiff injury or damage, and deny the remaining allegations this paragraph of the Complaint, including all subparts.

### III.
### GENERAL DENIAL

Defendants deny the allegations and/or legal conclusions set forth in Plaintiff's Complaint that have not been previously admitted, denied, or explained.

### IV.
### AFFIRMATIVE DEFENSES

Defendants reserve the right to rely upon any of the following or additional defenses to claims asserted by Plaintiff to the extent that such defenses are supported by information developed through discovery or evidence at trial. Defendants affirmatively show that:

### First Defense

1.    The Complaint fails to state a claim upon which relief can be granted

### Second Defense

2.    Celebrex® is a prescription medical product. The federal government has preempted the field of law applicable to the labeling and warning of prescription medical products. Defendants' labeling and warning of Celebrex® was at all times in compliance with applicable

federal law. Plaintiff's causes of action against Defendants, therefore, fail to state a claim upon which relief can be granted; such claims, if allowed, would conflict with applicable federal law and violate the Supremacy Clause of the United States Constitution.

### Third Defense

3.　At all relevant times, Defendants provided proper warnings, information and instructions for the drug in accordance with generally recognized and prevailing standards in existence at the time.

### Fourth Defense

4.　At all relevant times, Defendants' warnings and instructions with respect to the use of Celebrex® conformed to the generally recognized, reasonably available, and reliable state of knowledge at the time the drug was manufactured, marketed and distributed.

### Fifth Defense

5.　Plaintiff's action is time-barred as it is filed outside of the time permitted by the applicable Statute of Limitations, and same is pled in full bar of any liability as to Defendants.

### Sixth Defense

6.　Plaintiff's action is barred by the statute of repose.

### Seventh Defense

7.　If Plaintiff sustained any injuries or incurred any losses or damages as alleged in the Complaint, the same were caused by the negligence or fault of the Plaintiff and Plaintiff's damages, if any, are barred or reduced by the doctrines of comparative fault and contributory negligence and by the failure to mitigate damages.

### Eighth Defense

8.　The proximate cause of the loss complained of by Plaintiff is not due to any acts or omissions on the part of Defendants. Rather, said loss is due to the acts or omissions on the part of third parties unrelated to Defendants and for whose acts or omissions Defendants are not liable in any way.

### Ninth Defense

9.      The acts and/or omissions of unrelated third parties as alleged constituted independent, intervening causes for which Defendants cannot be liable.

### Tenth Defense

10.      Any injuries or expenses incurred by Plaintiff were not caused by Celebrex®, but were proximately caused, in whole or in part, by an idiosyncratic reaction, operation of nature, or act of God.

### Eleventh Defense

11.      Defendants affirmatively deny that they violated any duty owed to Plaintiff.

### Twelfth Defense

12.      A manufacturer has no duty to warn patients or the general public of any risk, contraindication, or adverse effect associated with the use of a prescription medical product. Rather, the law requires that all such warnings and appropriate information be given to the prescribing physician and the medical profession, which act as a "learned intermediary" in determining the use of the product. Celebrex® is a prescription medical product, available only on the order of a licensed physician. Celebrex® provided an adequate warning to Plaintiff's treating and prescribing physicians.

### Thirteenth Defense

13.      The product at issue was not in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

### Fourteenth Defense

14.      Celebrex® was at all times material to the Complaint reasonably safe and reasonably fit for its intended use and the warnings and instructions accompanying Celebrex® at the time of the occurrence of the injuries alleged by Plaintiff were legally adequate for its approved usages.

## Fifteenth Defense

15.     Plaintiff's causes of action are barred in whole or in part by the lack of a defect as the Celebrex® allegedly ingested by Plaintiff was prepared in accordance with the applicable standard of care.

## Sixteenth Defense

16.     If Plaintiff sustained any injuries or incurred any losses or damages as alleged in the Complaint, the same were caused by the unforeseeable alteration, change, improper handling, abnormal use, or other unforeseeable misuse of Celebrex® by persons other than Defendants or persons acting on its behalf after the product left the control of Defendants.

## Seventeenth Defense

17.     Plaintiff's alleged damages were not caused by any failure to warn on the part of Defendants.

## Eighteenth Defense

18.     Plaintiff's alleged injuries/damages, if any, were the result of preexisting or subsequent conditions unrelated to Celebrex®.

## Nineteenth Defense

19.     Plaintiff knew or should have known of any risk associated with Celebrex®; therefore, the doctrine of assumption of the risk bars or diminishes any recovery.

## Twentieth Defense

*20.*     Plaintiff is barred from recovering against Defendants because Plaintiff's claims are preempted in accordance with the Supremacy Clause of the United States Constitution and by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*

## Twenty-first Defense

21.     Plaintiff's claims are barred in whole or in part under the applicable state law because the subject pharmaceutical product at issue was subject to and received pre-market approval by the Food and Drug Administration under 52 Stat. 1040, 21 U.S.C. § 301.

### Twenty-second Defense

22.     The manufacture, distribution and sale of the pharmaceutical product referred to in Plaintiff's Complaint were at all times in compliance with all federal regulations and statutes, and Plaintiff's causes of action are preempted.

### Twenty-third Defense

23.     Plaintiff's claims are barred in whole or in part by the deference given to the primary jurisdiction of the Food and Drug Administration over the subject pharmaceutical product at issue under applicable federal laws, regulations, and rules.

### Twenty-fourth Defense

24.     Plaintiff's claims are barred in whole or in part because there is no private right of action concerning matters regulated by the Food and Drug Administration under applicable federal laws, regulations, and rules.

### Twenty-fifth Defense

25.     Plaintiff's claims are barred in whole or in part because Defendants provided adequate "direction or warnings" as to the use of the subject pharmaceutical product within the meaning of Comment j to Section 402A of the Restatement (Second) of Torts.

### Twenty-sixth Defense

26.     Plaintiff's claims are barred or limited to a product liability failure to warn claim because Celebrex® is a prescription pharmaceutical drug and falls within the ambit of Restatement (Second) of Torts § 402A, Comment k.

### Twenty-seventh Defense

27.     Plaintiff's claims are barred in whole or in part because the subject pharmaceutical product at issue "provides net benefits for a class of patients" within the meaning of Comment f to § 6 of the Restatement (Third) of Torts: Products Liability.

### Twenty-eighth Defense

28.     Plaintiff's claims are barred under § 4, et seq., of the Restatement (Third) of Torts: Products Liability.

**Twenty-ninth Defense**

29.     To the extent that Plaintiff is seeking punitive damages, Plaintiff has failed to plead facts sufficient under the law to justify an award of punitive damages.

**Thirtieth Defense**

30.     The imposition of punitive damages in this case would violate Defendants' rights to procedural due process under the Fourteenth Amendment of the United States Constitution, Article I, § 17 of the Constitution of the States of Minnesota, and the Constitution of the State of Alabama, and would additionally violate Defendants' right to substantive due process under the Fourteenth Amendment of the United States Constitution.

**Thirty-first Defense**

31.     Plaintiff's claims for punitive damages are barred, in whole or in part, by the Fifth and Fourteenth Amendments to the United States Constitution and are subject to all provisions of Minnesota and Alabama law, including, but not limited to, Minn. Stat. § 549.191 (2006).

**Thirty-second Defense**

32.     The imposition of punitive damages in this case would violate the First Amendment to the United States Constitution.

**Thirty-third Defense**

33.     Plaintiff's punitive damage claims are preempted by federal law.

**Thirty-fourth Defense**

34.     In the event that reliance was placed upon Defendants' nonconformance to an express representation, this action is barred as there was no reliance upon representations, if any, of Defendants.

**Thirty-fifth Defense**

35.     Plaintiff failed to provide Defendants with timely notice of any alleged nonconformance to any express representation.

### Thirty-sixth Defense

36.     To the extent that Plaintiff's claims are based on a theory providing for liability without proof of causation, the claims violate Defendants' rights under the United States Constitution.

### Thirty-seventh Defense

37.     Plaintiff's claims are barred, in whole or in part, because the advertisements, if any, and labeling with respect to the subject pharmaceutical products were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States Constitution.

### Thirty-eighth Defense

38.     To the extent that Plaintiff seeks punitive damages for the conduct which allegedly caused injuries asserted in the Complaint, punitive damages are barred or reduced by applicable law or statute or, in the alternative, are unconstitutional insofar as they violate the due process protections afforded by the United States Constitution, the excessive fines clause of the Eighth Amendment of the United States Constitution, the Commerce Clause of the United States Constitution, and the Full Faith and Credit Clause of the United States Constitution and the Constitutions of the States of Minnesota and Alabama.  Any law, statute, or other authority purporting to permit the recovery of punitive damages in this case is unconstitutional, facially and as applied, to the extent that, without limitation, it: (1) lacks constitutionally sufficient standards to guide and restrain the jury's discretion in determining whether to award punitive damages and/or the amount, if any; (2) is void for vagueness in that it failed to provide adequate advance notice as to what conduct will result in punitive damages; (3)  permits recovery of punitive damages based on out-of-state conduct, conduct that complied with applicable law, or conduct that was not directed, or did not proximately cause harm, to Plaintiff; (4) permits recovery of punitive damages in an amount that is not both reasonable and proportionate to the amount of harm, if any, to Plaintiff and to the amount of compensatory damages, if any; (5) permits jury consideration of net worth or other financial information relating to Defendants; (6) lacks constitutionally sufficient standards to be applied by the trial court in post-verdict

review of any punitive damages awards; (7) lacks constitutionally sufficient standards for appellate review of punitive damages awards; and (8) otherwise fails to satisfy Supreme Court precedent, including, without limitation, *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991), *TXO Production Corp. v. Alliance Resources, Inc.*, 509 U.S. 443 (1993); *BMW of North America, Inc. v. Gore*, 519 U.S. 559 (1996); and *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

### Thirty-ninth Defense

39.     The methods, standards, and techniques utilized with respect to the manufacture, design, and marketing of Celebrex®, if any, used in this case, included adequate warnings and instructions with respect to the product's use in the package insert and other literature, and conformed to the generally recognized, reasonably available, and reliable state of the knowledge at the time the product was marketed.

### Fortieth Defense

40.     The claims asserted in the Complaint are barred because Celebrex® was designed, tested, manufactured and labeled in accordance with the state-of-the-art industry standards existing at the time of the sale.

### Forty-first Defense

41.     If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were caused by the actions of persons not having real or apparent authority to take said actions on behalf of Defendants and over whom Defendants had no control and for whom Defendants may not be held accountable.

### Forty-second Defense

42.     The claims asserted in the Complaint are barred, in whole or in part, because Celebrex® was not unreasonably dangerous or defective, was suitable for the purpose for which it was intended, and was distributed with adequate and sufficient warnings.

### Forty-third Defense

43.     Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, and/or estoppel.

### Forty-fourth Defense

44.     Plaintiff's claims are barred because Plaintiff's injuries, if any, were the result of the pre-existing and/or unrelated medical, genetic and/or environmental conditions, diseases or illnesses, subsequent medical conditions or natural courses of conditions of Plaintiff, and were independent of or far removed from Defendants' conduct.

### Forty-fifth Defense

45.     The claims asserted in the Complaint are barred, in whole or in part, because Celebrex® did not proximately cause injuries or damages to Plaintiff.

### Forty-sixth Defense

46.     The claims asserted in the Complaint are barred, in whole or in part, because Plaintiff did not incur any ascertainable loss as a result of Defendants' conduct.

### Forty-seventh Defense

47.     The claims asserted in the Complaint are barred, in whole or in part, because the manufacturing, labeling, packaging, and any advertising of the product complied with the applicable codes, standards and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any state, and any agency thereof.

### Forty-eighth Defense

48.     The claims must be dismissed because Plaintiff would have taken Celebrex® even if the product labeling contained the information that Plaintiff contends should have been provided.

### Forty-ninth Defense

49.     The claims asserted in the Complaint are barred because the utility of Celebrex® outweighed its risks.

### Fiftieth Defense

50.     Plaintiff's damages, if any, are barred or limited by the payments received from collateral sources.

### Fifty-first Defense

51.     Defendants' liability, if any, can only be determined after the percentages of responsibility of all persons who caused or contributed toward Plaintiff's alleged damages, if any, are determined.  Defendants seek an adjudication of the percentage of fault of the claimants and each and every other person whose fault could have contributed to the alleged injuries and damages, if any, of Plaintiff.

### Fifty-second Defense

52.     Plaintiff's claims are barred, in whole or in part, by the doctrine of abstention in that the common law gives deference to discretionary actions by the United States Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act.

### Fifty-third Defense

53.     The claims asserted in the Complaint are barred, in whole or in part, because Celebrex® is comprehensively regulated by the FDA pursuant to the Federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq*., and regulations promulgated there under, and Plaintiff's claims conflict with the FDCA, with the regulations promulgated by FDA to implement the FDCA, with the purposes and objectives of the FDCA and FDA's implementing regulations, and with the specific determinations by FDA specifying the language that should be used in the labeling accompanying Celebrex®.  Accordingly, Plaintiff's claims are preempted by the Supremacy Clause of the United States Constitution, Article VI, clause 2, and the laws of the United States.

### Fifty-fourth Defense

54.     Plaintiff's misrepresentation allegations are not stated with the degree of particularity required by Federal Rule of Civil Procedure 9(b) and should be dismissed.

**Fifty-fifth Defense**

55.    Plaintiff's claim for punitive damages is barred pursuant to Minn. Stat. § 549.191.

**Fifty-sixth Defense**

56.    Defendants reserve the right to supplement their assertion of defenses as they continue with their factual investigation of Plaintiff's claims.

**V.**
**JURY DEMAND**

Defendants hereby demand a trial by jury.

**VI.**
**PRAYER**

WHEREFORE, Defendants pray that Plaintiff takes nothing by this suit, that Defendants be discharged with their costs expended in this matter, and for such other and further relief to which they may be justly entitled.

Dated:  May 1, 2008                         FAEGRE & BENSON LLP


                                            *s/ Joseph M. Price*
                                            Joseph M. Price, # 88201
                                            Erin M. Verneris # 0335174
                                            2200 Wells Fargo Center
                                            90 South Seventh Street
                                            Minneapolis, MN  55402-3901
                                            T (612) 766-7000
                                            F (612) 766-1600

                                            *Attorneys for Defendants Pfizer Inc.,*
                                            *Pharmacia Corporation, and G.D. Searle LLC*

fb.us.2834837.01

-46-

08 953 RSKTS

Inasmuch as no objection is pending at this time, the stay is lifted.

MAY - 7 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 21 2008

FILED
CLERK'S OFFICE

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION**                    MDL No. 1699

(SEE ATTACHED SCHEDULE)

### CONDITIONAL TRANSFER ORDER (CTO-101)

On September 6, 2005, the Panel transferred 30 civil actions to the United States District Court for the Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 391 F.Supp.2d 1377 (J.P.M.L. 2005). Since that time, 1,213 additional actions have been transferred to the Northern District of California. With the consent of that court, all such actions have been assigned to the Honorable Charles R. Breyer.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Northern District of California and assigned to Judge Breyer.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of California for the reasons stated in the order of September 6, 2005, and, with the consent of that court, assigned to the Honorable Charles R. Breyer.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Northern District of California. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

SCANNED

MAY 12 2008

A CERTIFIED TRUE COPY

MAY - 7 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

U.S. DISTRICT COURT
hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By
Deputy Clerk
Date 5-7-08

IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION                    MDL No. 1699

## SCHEDULE CTO-101 - TAG-ALONG ACTIONS

| DIST. | DIV. | C.A. # | CASE CAPTION |
|-------|------|--------|--------------|
| **MINNESOTA** | | | |
| MN | 0 | 08-948 | Gayle Zachery v. Pfizer Inc., et al. |
| MN | 0 | 08-949 | Donald Schwanke v. Pfizer Inc., et al. |
| MN | 0 | 08-951 | John Denton v. Pfizer Inc., et al. |
| MN | 0 | 08-952 | Earnest Colvin v. Pfizer Inc., et al. |
| MN | 0 | 08-953 | Velma Burt v. Pfizer Inc., et al. |
| MN | 0 | 08-955 | LaWanda Bell v. Pfizer Inc., et al. |
| **MISSISSIPPI SOUTHERN** | | | |
| MSS | 3 | 08-222 | Tomas M. Bandaries v. Pfizer Inc., et al. |
| MSS | 3 | 08-223 | Thad F. Waites v. Pfizer Inc. |
| **NEW YORK SOUTHERN** | | | |
| NYS | 1 | 08-2887 | John Bellew, et al. v. Pfizer Inc. |

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Richard  W. Wieking
Clerk

450 Golden Gate Avenue
San Francisco, CA 94102
415.522.2000

May 7th, 2008

District of Minnesota
300 South Fourth Street, Suite 406
Minneapolis, MN 55415

Re: <u>MDL 05-1699 In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation</u>

<u>Title of Case(s)</u>
Velma Burt v. Pfizer Inc., et al.

<u>Your Case Number(s)</u>
C.A. No. 0:08-953

Dear Clerk:

Enclosed is a certified copy of the order from the Judicial panel on Multidistrict Litigation transferring the above entitled action to the Northern District of California, San Francisco Division. The case has been assigned to the Honorable Charles R. Breyer for coordinated or consolidated pretrial processing pursuant to 28 USC §1407.

Please forward the **original record** and **a certified copy of the docket entries** in the case listed above along with the enclosed copy of this transmittal letter to:

United States District Court
Northern District of California
450 Golden Gate Avenue, P.O. Box 36060
San Francisco, CA 94102
Attn: Simone Voltz

If the case is an electronic case filing please do one of the following: 1) e-mail the PDF documents, as separate PDF files,  including a PDF copy of the docket sheet to **SFmdl_clerk@cand.uscourts.gov**, 2) provide us with a temporary log in and a password to directly access your database and to expedite the downloading of the PDF files we need and/or require, or, 3) if you prefer, on a disc. We appreciate your prompt attention to this matter.

Sincerely yours,
Richard W. Wieking, Clerk

By: Simone Voltz
Deputy Clerk

Encl.

CLOSED, CV

# U.S. District Court
## District of Minnesota (DMN)
### CIVIL DOCKET FOR CASE #: 0:08-cv-00953-PJS-JJG
### Internal Use Only

Burt v. Pfizer, Inc. et al DO NOT DOCKET. CASE HAS
BEEN TRANSFERRED OUT.
Assigned to: Judge Patrick J. Schiltz
Referred to: Magistrate Judge Jeanne J. Graham
Cause: 28:1332-pip-Diversity-Personal Injury, Product
Liability

Date Filed: 04/04/2008
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Velma Burt**
*individually*

represented by **Andy-NA D Birchfield, Jr.**
Not Admitted
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Frank-NA Woodson**
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Navan-NA Ward, Jr**
Not Admitted
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ted G Meadows**
Beasley Allen Crow Methvin Portis &
Miles, PC
PO Box 4160
Montgomery, AL 36103-4160
334-269-2343
Fax: 334-954-7555
Email: ted.meadows@beasleyallen.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Pfizer, Inc.**

represented by **Erin M Verneris**
Faegre & Benson LLP

90 S 7th St Ste 2200
Mpls, MN 55402-3901
612-766-7380
Fax: 612-766-1600
Email: everneris@faegre.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph M Price**
Faegre & Benson LLP
90 S 7th St Ste 2200
Mpls, MN 55402-3901
612-766-7000
Fax: 612-766-1600
Email: jprice@faegre.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Pharmacia Corporation**          represented by   **Erin M Verneris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph M Price**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**G.D. Searle, LLC**          represented by   **Erin M Verneris**
*formerly known as*                            (See above for address)
G.D. Searle & Co.                              *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph M Price**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Monsanto Company**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 04/04/2008 | 1 | COMPLAINT against all defendants ( Filing fee $ 350 receipt number 40022404.) assigned to Judge Patrick J Schiltz per Master List referred to Magistrate Judge Jeanne J Graham., filed by Velma Burt. (Attachments: # 1 Civil Cover Sheet) (jdf) (Entered: 04/04/2008) |

| 04/04/2008 | | Summons Issued as to Monsanto Company, Pfizer, Inc., Pharmacia Corporation, G.D. Searle, LLC. (jdf) (Entered: 04/04/2008) |
|---|---|---|
| 04/04/2008 | | (Court only) *** Copy of complaint sent to the MDL Panel (jdf) (Entered: 04/04/2008) |
| 05/01/2008 | 2 | ANSWER to Complaint by Pfizer, Inc., Pharmacia Corporation, G.D. Searle, LLC. (Price, Joseph) (Entered: 05/01/2008) |
| 05/01/2008 | 3 | RULE 7.1 DISCLOSURE STATEMENT by Pfizer, Inc., Pharmacia Corporation, G.D. Searle, LLC that there is no such parent or publicly held corporation to report. (Price, Joseph) (Entered: 05/01/2008) |
| 05/01/2008 | 4 | CERTIFICATE OF SERVICE by Pfizer, Inc., Pharmacia Corporation, G.D. Searle, LLC re 2 Answer to Complaint, 3 Rule 7.1 - Disclosure Statement (Price, Joseph) (Entered: 05/01/2008) |
| 05/02/2008 | | (Court only) *** Attorney Erin M Verneris for Pfizer, Inc., Pharmacia Corporation and G.D. Searle, LLC added. (kt) (Entered: 05/02/2008) |
| 05/12/2008 | 5 | CERTIFIED COPY OF THE CONDITIONAL TRANSFER ORDER (CTO-101) from the Judicial Panel on Mulit-District Litigation; transferring case to the Northern District of California. Case assigned to the Honorable Charles R Bryer for coordintated or consolidated pretrial pretrial proceedings. (jdf) (Entered: 05/13/2008) |